Malhame & Co. et al. v. United States

**No. 7750.—** 

Entry No. 954286, etc.

(Decided October 24, 1949)

*Sharretts & Hillis* (*Howard C. Carter* of counsel) for the plaintiffs.

*David N. Edelstein*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

LAWRENCE, Judge: The appeals for reappraisement listed in schedule "A," hereto attached and made a part hereof, involve the proper dutiable value of certain prayer books imported from Antwerp, Belgium. The appeals have been abandoned as to the cloth-bound prayer books. Consequently, we are concerned only with the leather-bound books.

In some of these appeals the merchandise was entered at certain unit values which were advanced by the appraiser, but in the majority of the appeals the merchandise was entered under duress to meet advances made by the appraiser in similar cases then pending on appeal. The merchandise was appraised on the basis of United States value as entireties, and in some of the appeals the appraiser also indicated separate values for the bindings and for the printed pages.

When the appeals were called for hearing, counsel for the plaintiffs stated—

I offer to stipulate that there is no foreign or export value as those terms are defined in Section 402 (c) and (d) for the leather bound prayer books at bar.

MR. AUSTER: I will agree to that, your Honor.

\* \* \* \* \* \* \*

MR. CARTER: I also offer to stipulate that the leather bindings are never sold or offered for sale separately from the text in the United States, or the text ever sold or offered for sale separately from the bindings in the United States.

MR. AUSTER: We agree to that, with the understanding however, that in the United States during the entire time of the importations involved, these identical books were being freely offered for sale in accordance with the definition of United States value as entireties at the appraised values thereof in each instance.

MR. CARTER: I agree to that.

At the outset I am faced with the question of whether or not there was any United States value for the books in question, and consequently whether or not there is any basis for the contention that the United States values found by the appraiser, either as entireties or as separate entities, are presumptively correct. If so, the plaintiffs had the burden of offering evidence to overcome that presumption. In this connection it should be stated that the provisions of paragraph 1410 of the Tariff Act of 1930 are identical with the provisions of paragraph 1310 of the Tariff Act of 1922. In *United States* v. *John Wanamaker*, 20 C. C. P. A. (Customs) 381, T. D. 46185, in dealing with the provisions of paragraph 1310 of the Tariff Act of 1922, our appellate court stated:

The Government in argument has pointed out that the judgment of the court below, sustaining the protest as to the sheets or pages and ordering the collector of customs to reliquidate the entries accordingly, may require a reliquidation upon an invalid appraisement. *Since the appraisement was made on the books as entireties it is at once apparent that such appraisement is invalid and void,* and it follows that the court's finding, that the collector's classification of the bindings and assessment of duty thereon at 25 per centum "must stand," was erroneous. [Italics supplied.]

As to the leather-bound books here in issue which were appraised as entireties, I consider the *Wanamaker* decision, *supra*, controlling. By virtue of said decision, these appraisements would seem to be invalid and void. It accordingly is clear that the presumption of correctness can not attach to them. By the same token neither can there be any United States value for the books where the bindings and texts were appraised separately, for the reason that it has been agreed between counsel that the leather bindings are never sold or offered for sale separately from the texts in the United States, nor are the texts ever sold or offered for sale separately from the bindings in the United States. There is, therefore, no United States value for the involved books, whether appraised as entireties or whether the texts and bindings are appraised as separate entities.

It has been suggested by counsel for the defendant that since the *Wanamaker* case, *supra*, was a classification case, it has no controlling effect in a reappraisement or value case, such as this case. It appears that our appellate court considered the *Wanamaker* case as controlling in a value case, for in *United States* v. *Malhame & Co.* and *Malhame & Co.* v. *United States*, 24 C. C. P. A. (Customs) 448, T. D. 48911, in dealing with the same question here involved and with identical merchandise, it held as follows:

With respect to the finding of value of the leather-bound books it appears that, following our decision in the case of *United States* v. *Wanamaker, supra,* the lower tribunals held that the texts and bindings should, under the provisions of paragraph 1410 of the Tariff Act of 1930, be separately appraised; that there was no foreign, export, or United States value for the leather bindings or the pages of the text in the imported condition, and therefore these should be appraised upon the basis of the cost of production of binding and text, considered separately.

The Government assigns error upon the point of separate appraisal of binding and text, and also with respect to the court's findings as to cost of production.

We will first consider the question of whether there is any substantial evidence in the record of the cost of production of the leather-bound books. The only evidence upon this point consists of the affidavit introduced in evidence as Exhibit 22, which, omitting certain schedules therein contained, reads as follows:

\* \* \* \* \* \* \*

The only matter contained in the omitted schedules which bears upon the cost of production is the percentage cost of text and percentage cost of binding, without any further itemization of the same.

\* \* \* \* \* \* \*

It will be observed that there is nothing in said affidavit separately showing items (1), (2), (3), and (4) of said section 402 (f).

In the case of *Snow* v. *United States*, 24 C. C. P. A. (Customs) 319, T. D. 48767, we affirmed a judgment of the Customs Court based upon its decision that, in order to comply with said section, each of the items (1), (2), (3), and (4) must be separately shown, and that, unless so shown, the importer's appeal to reappraisement may properly be dismissed.

Therefore, without repeating here our discussion in that case, we will say only that our decision therein is controlling here, and the appellate division in the case at bar erred in holding that the cost of production of the leather-bound books had been established by the importer, because there is no substantial evidence in the record tending to establish, in the manner provided by law, such cost of production.

At the trial herein, counsel for the plaintiffs offered and there was received in evidence as exhibit 1, an affidavit executed by one Adrianus Cornelius Josephus Proost, which, omitting the jurat and the schedule attached, is as follows:

I am a co-director of Henri Proost & Co. of Turnhout, Belgium, and I am personally familiar with all of the prayer books sold by my company to Malhame & Co. of New York City and shipped to said purchaser from 1930 to 1947. I am personally familiar with the descriptions on the invoices of the prayer books shipped to Malhame & Co. by my company during this period. All of the books described by their appropriate item numbers in the schedule annexed hereto, and made a part hereof, were manufactured by my company. I am personally familiar with and have direct supervision of the manufacture of these books and I am personally familiar with all costs incident to their manufacture, including the cost of materials, fabrication, manipulation and other processes employed in their manufacture and the usual general expenses and profits. All records are and have been always kept under my supervision. All of my records prior to 1941, except for the year 1935, do not exist any more. It is my distinct recollection, confirmed by these records of 1935, that the usual general expenses amounted to $33\frac{1}{3}\%$ of the cost of materials, fabrication and manipulation, and the profit amounted to $16\frac{2}{3}\%$ of the cost of materials, fabrication and manipulation, and that the invoice price represents the total of the cost of materials, fabrication and manipulation, usual general expenses and profit in every instance.

In the schedule attached hereto, and made a part hereof, the various leather bound books shipped by my company to Malhame & Co. during the period specified are listed. Each description on said schedule is indicated by the text number and binding number as they appear on the consular invoices, the separate cost of materials, fabrication, manipulation or other processes employed in manufacturing the text and the binding, general expenses attributable to each text and binding, packing charges pro-rated for each text and binding and a profit for each text and binding, as explained heretofore. As a part of my business it is necessary for me to know the profit made by my competitors. To the best of my knowledge and belief, the profit added to make our selling price is at least equal to the profit which ordinarily is added in the case of books of the same general character as the books sold by my company, by other manufacturers in Belgium.

At no time during the years above specified was the leather binding of any of the books herein referred to sold or offered for sale in Belgium or for export to the United States or other countries separate from the text, nor was the text sold or offered for sale separate from the binding. To the best of deponent's knowledge and belief, no other manufacturer or dealer was either selling or offering for sale

during the period in question leather bindings of this character separate from the text or the text separate from the bindings.

Except for the schedule attached, the remainder of the affidavit, exhibit 1 herein, is couched in practically the same language as the affidavit by Joseph H. Proost, exhibit 22 in the *Malhame* case, *supra.* As noted in the former *Malhame* case, *supra*, the only matter contained in the schedules attached to exhibit 22 therein which had any bearing on the cost of production was the percentage cost of text and percentage cost of binding, without any further itemization of the same. In the instant case, the schedule attached to exhibit 1 contains (1) Reappraisement No., (2) Consular Invoice Number and Year, (3) Case No., (4) Item and Number, (5) Cost of Materials, Fabrication Manipulation per Book, (6) Overhead per Book, (7) Cost of packing per Book, (8) Profit per Book, and (9) Total Cost of Production per Book. The separate costs for both the text and for the binding are given for cost of materials, fabrication, and manipulation per item; separate costs for the text and for the binding are given for overhead per item; separate costs for the text and for the binding are given for packing per item; the profit per item is also given for both the text and for the binding; and also the total cost of production is given for both the binding and for the text.

It will therefore be seen that the plaintiffs herein have met the fatal defect in exhibit 22 in the former *Malhame* case, *supra*, by showing separately and in detail as to each text and as to each binding the items specified in section 402 (f) of the Tariff Act of 1930.

The defendant offered and there were received in evidence and marked collective exhibits "A," "B," and "C," three reports of a treasury attaché. In many respects the evidence contained in these reports is not out of line with the evidence offered by the plaintiffs, and in those respects in which the evidence contained in said reports is not in accord with that offered by the plaintiffs, it is not of sufficient probative value to overcome the *prima facie* case which plaintiffs' evidence establishes.

Attached to each of said reports is a schedule purporting to show the cost of production of certain books. These schedules are not in the English language, but each contains what is said to be "A glossary giving a translation and explanation of the various processes and materials * * *," all of which have been carefully examined and weighed.

In the treasury attaché's report marked collective exhibit "B" it is stated that the "Cost of production figures have been confined to the year 1935 and to edition No. 2610, 'Key of Heaven,' as representative. This prayer book in binding No. R12 is one of the fine leather bound books sold for export by this firm." Although this report has attached

thereto a schedule marked exhibit "A," which purports to give the cost of production of certain books, in the report proper no reference is made to the attached schedule.

In collective exhibit "A" it is stated that—

\* \* \* I visited the offices of Henri Proost & Cie, Turnhout, Belgium, and interviewed Mr. Henri Proost, the proprietor. \* \* \*

At the trial, however, counsel for the respective parties agreed that at that time Mr. Henri Proost was dead and that the party actually interviewed by the treasury representative was a Mr. Adrianus Cornelius Josephus Proost.

During the trial of this case, defendant made two motions to dismiss certain of these appeals for reappraisement upon various grounds. These motions were taken under advisement to be disposed of at this time. Accordingly, both motions are denied and an exception allowed.

Upon a full consideration of the entire record before me, I am satisfied that the weight of the evidence establishes the cost of production for the texts and bindings, separately, for the leather-bound books, as shown in schedule "B"[1] hereto attached and made a part hereof.

I therefore find as facts:

1. That the merchandise herein consists of leather-bound prayer books exported from Antwerp, Belgium, and entered at the port of New York.

2. That, upon the record before me, there are neither foreign nor export values for these leather-bound prayer books during the period of these importations.

3. That United States values for these leather-bound prayer books do not exist for the reason that under the authorities hereinbefore cited separate values must be found for the bindings and for the texts, and it appears that at or immediately prior to the dates of exportation here involved the bindings and texts, as such, were never freely offered for sale or sold in the United States.

4. That the cost of production is the proper basis for the finding of values for these leather-bound prayer books, and such values are those set out in schedule "B," *supra*, for the bindings and for the texts, respectively, packing included.

As matter of law, I hold that the cost of production for the separate bindings and for the separate texts, respectively, is as set out in finding of fact No. 4, *supra*. Insofar as these appeals relate to all other merchandise, they are hereby dismissed.

Judgment will be entered accordingly.

[1] Schedule "B" referred to above, consisting of 73 typewritten pages, has been omitted from the publication.