UNITED STATES *v.* MALHAME & CO. ET AL.

No. 7965.—
Entry No. 954286, etc.

Third Division, Appellate Term

(Decided March 5, 1951)

*David N. Edelstein,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the appellant.
*Sharretts, Hillis & Paley* (*Howard C. Carter* of counsel) for the appellees.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: The appeals for reappraisement listed in schedule "A," hereto attached and made a part hereof, are the subject of this application for review of the decision of a single judge, reported in *Malhame & Co. et al.* v. *United States,* 23 Cust. Ct. 290, Reap. Dec. 7750, and involve the proper basis for valuation, under section 402 of the Tariff Act of 1930, of certain prayer books of *bona fide* foreign authorship imported from Belgium. As imported, the importations consisted of both leather-bound and cloth-bound books. As to the cloth-bound books, the appeals were abandoned by the importers before the single judge and were properly dismissed insofar as they covered that merchandise. The only question before us, therefore, is the proper value for the leather-bound books under the statute. The appraiser found the proper basis of value to be United States value (section 402 (e) of said tariff act) for the text and leather binding as an entirety, insofar as it covered the goods involved in reappraisement 98115–A to and including reappraisement 105009–A. As to the remaining appeals, the appraiser also found separate values for the text and the leather binding, apparently in conformity with the

decision handed down by our appellate court in the case of *United States* v. *John Wanamaker*, 20 C. C. P. A. (Customs) 381, T. D. 46185. That case held that the texts and leather bindings of leather-bound books were separable for duty purposes. The provisions of the statute there involved (paragraph 1310 of the Tariff Act of 1922) are identical with those of paragraph 1410 of the Tariff Act of 1930 as originally enacted.

At the trial below it was stipulated that there was no foreign or export value for the leather-bound prayer books before us. Counsel further agreed as follows:

MR. CARTER: I also offer to stipulate that the leather bindings are never sold or offered for sale separately from the text in the United States, or the text ever sold or offered for sale separately from the bindings in the United States.

MR. AUSTER: We agree to that, with the understanding however, that in the United States during the entire time of the importations involved, these identical books were being freely offered for sale in accordance with the definition of United States value as entireties at the appraised values thereof in each instance.

MR. CARTER: I agree to that.

Counsel for the importers below offered and there was received in evidence as exhibit 1, an affidavit of one Adrianus Cornelius Josephus Proost. The Government offered and there were received in evidence three reports of a Treasury attaché.

Upon the record as thus made, the judge below found that leather-bound prayer books are not subject to appraisement as entireties but that separate values must be found for the bindings and for the texts, and further, that the proper basis for valuation of these books is the statutory cost of production. He held that said cost of production of the texts and bindings for the various items involved was as set forth in the schedule attached to the affidavit, exhibit 1 (which items he enumerated in schedule "B" of his decision).

In arriving at his conclusion, the judge below held that under the ruling handed down in the *Wanamaker* case, *supra*, the appraisements insofar as they found a value for the books as entireties were seemingly invalid and void and that no presumption of correctness can attach to such findings of value. The *Wanamaker* case, *supra*, arose on the classification side of the court, and for that reason counsel for the Government contends that it has no controlling effect in this case which arose on the reappraisement or value side of the court. As pointed out in the decision below, the *Wanamaker* case was considered controlling in a value case by our appellate court in deciding the same issue as here involved as to identical merchandise. See *United States* v. *Malhame & Co.* and *Malhame & Co.* v. *United States*, 24 C. C. P. A. (Customs) 448, T. D. 48911.

It was also held in the decision below that there was no United States value for the instant merchandise, whether considered as entireties or as separate entities. With that conclusion we also agree.

Insofar as the appraiser found United States value for the separate entities, counsel have agreed that neither of the components was sold or offered for sale separately in the United States. Therefore, there can be no United States value for such separate entities.

We must, therefore, resort to the cost-of-production method under the statute, and examine the proof presented by appellees herein in support of their contention that the separate statutory elements of cost of production of the texts and bindings are set forth in their proof. In the *Malhame* case, *supra*, which involved the same issue and identical merchandise as here presented, the court held as follows:

We will first consider the question of whether there is any substantial evidence in the record of the cost of production of the leather-bound books. The only evidence upon this point consists of the affidavit introduced in evidence as Exhibit 22, which, omitting certain schedules therein contained, reads as follows:

\* \* \* \* \* \* \*

The only matter contained in the omitted schedules which bears upon the cost of production is the percentage cost of text and percentage cost of binding, without any further itemization of the same.

The court then set out section 402 (f) of the Tariff Act of 1930, which defines the cost of production as the sum of (1) the cost of materials, fabrication, etc., (2) the usual general expenses, (3) the cost of containers and other costs therein enumerated, and (4) an addition for profit. The court then continued:

It will be observed that there is nothing in said affidavit separately showing items (1), (2), (3), and (4) of said section 402 (f).

In the case of *Snow* v. *United States*, 24 C. C. P. A. (Customs) 319, T. D. 48767, we affirmed a judgment of the Customs Court based upon its decision that, in order to comply with said section, each of the items (1), (2), (3), and (4) must be separately shown, and that, unless so shown, the importer's appeal to reappraisement may properly be dismissed.

Therefore, without repeating here our discussion in that case, we will say only that our decision therein is controlling here, and the appellate division in the case at bar erred in holding that the cost of production of the leather-bound books had been established by the importer, because there is no substantial evidence in the record tending to establish, in the manner provided by law, such cost of production.

In order to supply the elements of proof which the court held were lacking in the *Malhame* case, *supra*, appellees herein introduced into evidence the affidavit, exhibit 1, *supra*, together with schedules thereto attached. Said affidavit is as follows:

\* \* \* \* \* \* \*

I am a co-director of Henri Proost & Co. of Turnhout, Belgium, and I am personally familiar with all of the prayer books sold by my company to Malhame & Co. of New York City and shipped to said purchaser from 1930 to 1947. I am personally familiar with the descriptions on the invoices of the prayer books shipped to Malhame & Co. by my company during this period. All of the books described by their appropriate item numbers in the schedule annexed hereto, and made a part hereof, were manufactured by my company. I am personally

familiar with and have direct supervision of the manufacture of these books and I am personally familiar with all costs incident to their manufacture, including the cost of materials, fabrication, manipulation and other processes employed in their manufacture and the usual general expenses and profits. All records are and have been always kept under my supervision. All of my records prior to 1941, except for the year 1935, do not exist any more. It is my distinct recollection, confirmed by these records of 1935, that the usual general expenses amounted to 33⅓% of the cost of materials, fabrication and manipulation, and the profit amounted to 16⅔% of the cost of materials, fabrication and manipulation, and that the invoice price represents the total of the cost of materials, fabrication and manipulation, usual general expenses and profit in every instance.

In the schedule attached hereto, and made a part hereof, the various leather bound books shipped by my company to Malhame & Co. during the period specified are listed. Each description on said schedule is indicated by the text number and binding number as they appear on the consular invoices, the separate cost of materials, fabrication, manipulation or other processes employed in manufacturing the text and the binding, general expenses attributable to each text and binding, packing charges pro-rated for each text and binding and a profit for each text and binding, as explained heretofore. As a part of my business it is necessary for me to know the profit made by my competitors. To the best of my knowledge and belief, the profit added to make our selling price is at least equal to the profit which ordinarily is added in the case of books of the same general character as the books sold by my company, by other manufacturers in Belgium.

At no time during the years above specified was the leather binding of any of the books herein referred to sold or offered for sale in Belgium or for export to the United States or other countries separate from the text, nor was the text sold or offered for sale separate from the binding. To the best of deponent's knowledge and belief, no other manufacturer or dealer was either selling or offering for sale during the period in question leather bindings of this character separate from the text or the text separate from the bindings.

Attached to this affidavit is a schedule in which are set forth the reappraisement number; consular invoice number and year; case number; item and number; cost of materials, fabrication, manipulation per book; overhead per book; cost of packing per book; profit per book; and the total cost of production per book. The schedule sets forth separate costs for the text and binding per item for the above-enumerated costs and profit, and the total cost of production is also given for both the binding and the text.

It is noted that the affiant states that, except as to the year 1935, the records prior to those of the year 1941 are no longer in existence. He further states the percentages applicable for general expenses and profit and that the invoice price represents the total of the cost of materials, fabrication, and manipulation, usual general expenses, and profit in every instance. These statements are based upon his recollection which is confirmed by the records for 1935. At first impression, it would seem that a compilation of the amounts of the items entering into the cost of production of such a vast number of items as are here involved, in the absence of records except for 1 of the 10 years involved, would be an impossible task and ordinarily we would

so hold. However, in the case at bar the evidence indicates that the affiant is personally familiar with all costs incident to the manufacture of these books and that all records have always been kept under his supervision; further, that there is not an unusual variance in the percentages allowed by this firm and other manufacturers of merchandise of the same general character from year to year. It is the duty of the appraiser and the court in arriving at the amount to be allocated for profit to consider not only the profits of the manufacturer of the imported merchandise, which is not the sole criterion, but other evidence of record as to profits ordinarily made by other manufacturers of merchandise of the same general character and the amount of profit should be determined according to the weight of all the evidence. *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378.

The proof produced on behalf of the appellant, consisting of the three reports of the Treasury attaché, are likewise based upon the only reports available, those for the year 1935. We are in accord with the finding of the judge below that—

* * * In many respects the evidence contained in these reports is not out of line with the evidence offered by the plaintiffs [appellees], and in those respects in which the evidence contained in said reports is not in accord with that offered by the plaintiffs, it is not of sufficient probative value to overcome the *prima facie* case which plaintiffs' evidence establishes.

Upon this record the trial judge found that the weight of the evidence established the cost of production for the text and the bindings, separately, for the leather-bound books. We think he arrived at the right conclusion for the proper reasons stated. From a consideration of the record we find that there is substantial evidence to support his finding.

We therefore find as facts:

(1) That the merchandise in question consists of leather-bound prayer books exported from Antwerp, Belgium, during the years 1930 to 1940.

(2) That the leather bindings and the text are not sold or offered for sale separately in the United States.

(3) That during the period of 1930 to 1940 the identical books were being offered for sale as entireties at the appraised values thereof in each instance, in the United States.

As a matter of law we conclude:

(1) That for the period involved there was neither a foreign nor an export value for these leather-bound books.

(2) That inasmuch as the ruling of the Court of Customs and Patent Appeals herein cited requires that separate values be found for the bindings and for the text of these books, and the record discloses that at or immediately prior to the dates of exportation the

bindings and text were not freely offered or sold separately in the United States, there is no United States value for the books as such.

(3) That the proper basis for valuation of the leather-bound books here involved is the cost of production of the bindings and of the text, separately, and that such values are those set forth in schedule "B,"[1] hereto attached and made part hereof, which values include packing.

(4) As to all other merchandise the appeals are dismissed.

The decision of the court below is affirmed.

---

[1] Schedule "B" referred to above, consisting of 73 typewritten pages, has been omitted from the publication.